UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LETITIA S.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C19-1434-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION**

## INTRODUCTION

Plaintiff appeals the ALJ's decision that she is no longer disabled, contending the ALJ erred in (1) finding medical improvement occurred; (2) assessing certain medical opinions; and (3) assessing the lay statements. Dkt. 12 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was found disabled as of October 22, 2007, in a decision by ALJ Helen Francine Strong ("ALJ Strong") dated June 23, 2010. Tr. 85-89. An anonymous tip led to a disability fraud investigation of Plaintiff in October 2011, and Plaintiff was subsequently notified the agency required additional information about her conditions or her benefits would cease. *See* Tr.

ORDER REVERSING THE COMMISSIONER'S DECISION - 1

148-55, 262-90. Plaintiff failed to appear for multiple consultative examinations, and the agency subsequently notified Plaintiff the lack of information to support her receipt of disability benefits would result in her benefits being terminated as of November 1, 2011. Tr. 148-55.

Plaintiff requested a hearing with a disability hearing officer and subsequently appeared for a consultative examination, which the disability hearing officer relied upon to find in September 2012 that Plaintiff was no longer disabled as of November 1, 2011, due to medical improvement. Tr. 115-26. Plaintiff requested an ALJ hearing (Tr. 31-80), and ALJ Robert P. Kingsley ("ALJ Kingsley") subsequently found in April 2014 she was not disabled as of November 1, 2011. Tr. 12-24. Plaintiff sought judicial review, and the U.S. District Court for the Western District of Washington reversed and remanded ALJ Kingsley's decision, with instructions to consider the impairments at the time of ALJ Strong's decision to determine whether medical improvement occurred. Tr. 929-42.

On remand, ALJ S. Andrew Grace ("the ALJ") held a hearing in August 2017 (Tr. 854-94), and subsequently again found Plaintiff's disability ended on November 1, 2011. Tr. 750-68.

## THE ALJ'S DECISION

The continuing disability review process is similar to the five-step sequential evaluation process, with additional determinations regarding whether there has been medical improvement and whether the medical improvement is related to the ability to work. *Compare* 20 C.F.R. § 416.920 *with* 20 C.F.R. § 404.994.

Under the sequential continuing disability process, the ALJ must first determine whether the claimant's impairments or combination of impairments meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. Here, the ALJ found Plaintiff's

impairments do not currently meet or equal a listing, and therefore the ALJ's inquiry continued. Tr. 752-54.

The ALJ next considers whether medical improvement has occurred, as shown by a decrease in medical severity of an impairment. Here, the ALJ found medical improvement occurred on November 1, 2011, and therefore the ALJ's inquiry continued. Tr. 754-56.

The ALJ must next determine whether the medical improvement is related to the ability to work. Here, the ALJ found Plaintiff's medical improvement is related to her ability to work. Tr. 756.

If medical improvement is related to the ability to work, the ALJ must then determine whether all of the claimant's impairments in combination are severe. Here, the ALJ found Plaintiff did continue to have severe impairments after November 1, 2011. Tr. 756-57.

If the claimant's impairments are severe, the ALJ must assess the claimant's residual functional capacity ("RFC") and determine whether the claimant has demonstrated an inability to perform past relevant work. Here, the ALJ assessed Plaintiff's RFC and found she did not have any past relevant work, so he proceeded to the final step to consider whether, given her RFC and considering her age, education, and past work experience, Plaintiff can perform other work. Tr. 757-66. The ALJ found Plaintiff can perform other work, and was therefore not disabled as of November 1, 2011. Tr. 766-68.

## DISCUSSION

**A.      Medical Improvement**

Plaintiff assigns error to the ALJ's finding of medical improvement. First, she argues ALJ Grace erred in finding medical improvement without access to the evidence considered by ALJ Strong in finding Plaintiff disabled in 2010 in the "comparison point decision" ("CPD").

According to Plaintiff, a finding of medical improvement necessarily depends on a comparison of the evidence underlying the CPD with the evidence available at the time of the continuing disability review.  Dkt. 12 at 9-10.

Plaintiff cites no cases supporting her position, and the Commissioner cites no cases in contradiction, but the Court is aware of several non-binding cases supporting Plaintiff's argument. *See, e.g.*, *Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002) ("In the absence of the early medical records, the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that [the claimant's] 1997-1998 condition represents an 'improvement.'"); *Byron v. Heckler,* 742 F.2d 1232, 1236 (10th Cir. 1984) ("In order for evidence of improvement to be present, there must also be an evaluation of the medical evidence for the original finding of disability."); *Vaughn v. Heckler,* 727 F.2d 1040, 1043 (11th Cir. 1984) (holding that the ALJ erred by focusing only on the current evidence of the claimant's impairments and without an evaluation of the medical evidence underlying the CPD, finding that "[w]ithout such a comparison, no adequate finding of *improvement* could be rendered" (emphasis in original)); *Newmiller v. Colvin*, 2016 WL 3034670, at *3-4 (C.D. Cal. May 2016) (holding that the ALJ has an "affirmative duty to compare prior medical evidence with current medical findings"); *Medina v. Colvin*, 2015 Wl 5448498, at *11-12 (N.D. Cal. Aug. 21, 2015) ("[The Social Security Act] does not authorize an ALJ to find medical improvement without making a comparison of prior and current medical evidence.  A termination decision is not 'legally proper and supported by substantial evidence when the CPD evidence is absent from the record.' (quoting *Spratt v. Colvin*, 2014 WL 2153933 at *5 (W.D. Okla. May 20, 2014))).

These authorities are consistent with the plain language of the regulations, and persuade the Court the ALJ's finding of medical improvement must be based on a comparison of the

CPD's medical evidence with the current medical evidence pertaining to the continuing disability review. *See* 20 C.F.R. § 416.994(b)(2)(i) ("Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings[.]"). Because the ALJ here did not review the medical evidence from the time of the CPD, the ALJ's finding of medical improvement is erroneous.

Plaintiff also contends the ALJ erred in considering whether she currently met or equaled the current version of Listings 12.04, 12.06, 12.08, 12.11, and 12.15 (Tr. 756), rather than the prior versions of the Listings that she was found to satisfy in ALJ Strong's CPD. Dkt. 12 at 6-7. Again, Plaintiff cites no authority to support her position, but the Court is aware of at least one case that supports Plaintiff's contention. *See Dicus v. Sullivan*, 1990 WL 264706, at \*4 (E.D. Wash. Feb. 19, 1990) (holding that when a CPD finds that a claimant meets or equals a listing, upon a continuing disability review "the [claimant's] current condition must be compared with the original listing, whether or not that listing is still in effect"). The applicable regulation does not anticipate a change in the listings (20 C.F.R. § 416.994(b)(2)(iv)(A)) or provide guidance specific to this situation, but the Court finds that using the same listing requirements, as required by *Dicus*, is consistent with the goal of accomplishing a true apples-to-apples comparison of Plaintiff's condition at the time of the CPD and the time of the continuing disability review. On remand, the ALJ should look to whether Plaintiff currently meets or equals the versions of Listings 12.04 and 12.08 in effect at the time of ALJ Strong's decision. *See* Tr. 87-88.

**B.     Medical Opinions**

Plaintiff also challenges the ALJ's assessment of the medical opinions, each of which the Court will address in turn.

### 1. Christina Rasmussen, Ph.D.

Dr. Rasmussen examined Plaintiff in August 2012, and wrote a narrative report describing Plaintiff's symptoms, test results, and limitations. Tr. 623-29. This evaluation was ordered by the agency in order to determine Plaintiff's functional abilities in connection with the decision to terminate disability benefits, and the disability hearing officer relied on Dr. Rasmussen's opinion to determine the severity of Plaintiff's mental impairments in the September 2012 decision. Tr. 121.

The ALJ also credited Dr. Rasmussen's opinion Plainitiff would have no difficulty understanding and carrying out simple instructions. Tr. 763-64. The ALJ discounted Dr. Rasmussen's opinion to the extent she suggested Plaintiff was limited to performing instructions with 1-2 steps, finding that restriction to be inconsistent with the evidence that Plaintiff could care for small children, socialize, shop, participate at church, make meals, volunteer at the Kiwanis club each week, and play games like blackjack. Tr. 764.

Plaintiff argues the ALJ erred in relying on Dr. Rasmussen's opinion because Dr. Rasmussen was not informed her report would be used to determine whether Plaintiff had experienced medical improvement. Dkt. 12 at 11. Specifically, Plaintiff notes Dr. Rasmussen did not diagnose the same mental conditions referenced in ALJ Strong's decision, and thus her report is not useful in determining whether Plaintiff improved since then. *Id.* Plaintiff cites no authority requiring an examining provider be informed of a decision to terminate benefits, or that an examining provider must comment on prior records or administrative decisions under circumstances such as these, and the Court is not aware of any such authority. Thus, under these circumstances, Plaintiff has not met her burden to show error in the ALJ's reliance on Dr.

1  Rasmussen's opinion based on the provider's lack of knowledge as to the procedural posture of

2  Plaintiff's disability claim.

3       Plaintiff also suggests Dr. Rasmussen's opinion is invalid because she did not reference a

4  verbal altercation taking place at the beginning of the examination, which Plaintiff described in

5  detail at the 2013 administrative hearing. Tr. 55-60. The ALJ, however, found Plaintiff's self-

6  reports were not reliable (Tr. 758-62), a finding which Plaintiff does not challenge, and under

7  these circumstances Plaintiff's self-reported altercation with Dr. Rasmussen need not be credited

8  by the ALJ.

9       Lastly[1], Plaintiff challenges the ALJ's rejection of Dr. Rasmussen's limiting Plaintiff to

10  performing 1-2-step tasks, arguing that the ALJ acted as "his own medical expert" in finding the

11  limitation to be inconsistent with Plaintiff's activities. Dkt. 12 at 12-13. No medical expertise

12  was required to find that caring for children and playing blackjack, for example, are activities that

13  involve tasks of more than 1-2 steps, however. The ALJ reasonably found that portion of Dr.

14  Rasmussen's opinion to be inconsistent with Plaintiff's activities, and properly discounted it on

---

[1] Plaintiff's opening brief also includes some miscellaneous arguments in the section regarding Dr. Rasmussen's opinion. *See* Dkt. 12 at 13-14. Plaintiff cites the legal standards applicable to an ALJ's assessment of a claimant's testimony, but does not directly assign error to that portion of the ALJ's decision. Plaintiff states that her activities are only relevant if there has been medical improvement in the conditions that were previously found disabling, and she contends that her activities are not inconsistent with those conditions and that she performed those same activities at the time she was found disabled. Dkt. 12 at 13-14. Given the Court found error in the ALJ's finding of medical improvement, as explained *supra*, it appears that this issue may be moot.

     Plaintiff also mentions in the Dr. Rasmussen section of her brief that the ALJ did not address the observations of an agency employee. Dkt. 12 at 14. This argument is addressed in the lay evidence section of this order, *infra*.

     Lastly, Plaintiff notes that Plaintiff has a medical marijuana card and that there is no evidence that she was responsible for the parties that took place on her property and were mentioned in the CDIU report. Dkt. 12 at 14. This argument is unconnected to any particular assignment of error and appears to be a non sequitur.

that basis. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

### 2. Kathleen Andersen, M.D.

After the 2017 administrative hearing, Dr. Andersen performed a consultative examination of Plaintiff in February 2018 and wrote a narrative report describing her symptoms and limitations. Tr. 1278-89. The ALJ summarized Dr. Andersen's findings and explained he gave them partial weight because her conclusions were inconsistent with Plaintiff's "relatively minimal treatment and stable mental health[,]" as well as her activities. Tr. 762-63.

One of the activities cited by the ALJ as inconsistent with Dr. Andersen's conclusions is Plaintiff's helping her children get ready in the morning and walking one of them to daycare. Tr. 763. Plaintiff notes in her opening brief that the reason why she had to take her child to daycare was because she was not allowed by CPS to be alone with her child after her husband leaves for work. Dkt. 12 at 15. This point is irrelevant to the reason why the ALJ cited Plaintiff's activities. This activity is inconsistent with Dr. Andersen's opinion that Plaintiff would have marked difficulty in focusing on and persisting at tasks (Tr. 1286), regardless of the reason why she must engage in the activity.

Plaintiff also contends that her minimal treatment does not necessarily imply that her problems are not severe, because undertreatment is common among the mentally ill due to lack of insight. Dkt. 12 at 16. Any error in this line of reasoning is harmless, in light of the ALJ's valid reason as described above. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Lastly, Plaintiff contends the ALJ erred in finding Dr. Andersen's opinion is inconsistent with medical improvement in November 2011. The Court agrees that the ALJ in suggesting that Dr. Andersen's opinion should be discounted simply because it is contrary to his conclusion that Plaintiff experienced medical improvement in November 2011. *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, *Rhodes v. Schweiker*, 660 F.2d 722, 724 (9th Cir. 1981), he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result. *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982)."). This error is harmless, however, in light of the ALJ's other valid reason to discount Dr. Andersen's opinion. *See Carmickle*, 533 F.3d at 1162-63.

Plaintiff also emphasizes the ALJ ordered Dr. Andersen's consultative examination (Dkt. 12 at 16), but this fact does not obligate the ALJ to adopt Dr. Andersen's conclusions wholesale. The ALJ sought the consultative examination as a means of developing the record, but Plaintiff cites no authority requiring an ALJ to adopt an examiner's opinion simply because the ALJ requested the examination and the Court is not aware of any.

### 3. Global Assessment of Functioning ("GAF") scores

The ALJ noted the record contains several GAF scores, which the ALJ discounted because they do not address specific functional limitations and were unexplained. Tr. 764-65. The ALJ also noted the most current version of the Diagnostic and Statistical Manual of Mental Disorders eliminated the use of the GAF score. Tr. 765.

Plaintiff argues the ALJ erred in rejecting the GAF scores, because even if the scores are no longer in use, the scores of record "still have value as a tool to assess the severity of an

individual's mental conditions." Dkt. 12 at 17. But particularly where the scores are unexplained, as in this case, a GAF score has limited probative value to the ALJ's RFC determination, which focuses on longitudinal functional capabilities. *See Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). Thus, the ALJ did not err in discounting the GAF scores.

**C.    Lay Statements**

The ALJ summarized statements written by Plaintiff's husband (Tr. 311, 1102-03), childhood friend (Tr. 304-05), and neighbor (Tr. 308), and gave the husband's and neighbor's statements partial weight and the childhood friend's statement limited weight. The ALJ discounted the husband's and neighbor's statements because they described social limitations that were inconsistent with the evidence of Plaintiff's ability to socialize online and at casinos, maintain romantic relationships, volunteer on a weekly basis with a friend, and care for children. Tr. 765-66. The ALJ cited those same reasons as justification for discounting the childhood friend's statement, and also stated that the medical record showed "significant periods of stability." *Id*. Inconsistency with a claimant's activities or inconsistency with the medical record are both legally sufficient reasons to discount a lay statement. *See Carmickle*, 533 F.3d at 1164 (activities), and *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (medical evidence).

Plaintiff argues her social activities were performed at times when she was feeling good and her mood was calm, and that there is insufficient information about the length of time she spent volunteering. Dkt. 12 at 17-18. Plaintiff also emphasizes her children were removed from her custody. *Id*. Nonetheless, Plaintiff's ability to maintain relationships and leave her home on a regular basis contradict the lay statements. *See* Tr. 304-05, 308, 311, 1102-03.

The ALJ failed to discuss an additional lay statement provided by Florence Miller, who first met Plaintiff in jail and then two years later discovered they lived in the same apartment complex. Tr. 301. Ms. Miller's letter does not describe any particular symptoms or limitations and is therefore not inconsistent with the ALJ's RFC assessment, and thus any error in the ALJ's failure to discuss this letter is harmless. Notably, Plaintiff does not point to any particular limitation identified by Ms. Miller that was not accounted for by the ALJ, and thus has failed to meet her burden to show harmful error in the ALJ's failure to discuss Ms. Miller's statement.

Plaintiff also notes the ALJ failed to discuss the notes of agency personnel describing Plaintiff's behavior during an interview. Dkt. 14 at 5-6. The agency employee described Plaintiff as agitated at first, speaking loudly off-topic and not amenable to redirection. Tr. 111. The Commissioner contends the behavior observed by the agency employee is not necessarily inconsistent with the ALJ's RFC assessment, because the ALJ restricted Plaintiff from working with the public and allowed only occasional contact with co-workers. Dkt. 13 at 9. Plaintiff contends in her reply brief "[i]t is clear that the behaviors [she] manifested [] in the course of the Agency interview are inconsistent with an ability to succeed in a work setting" (Dkt. 14 at 6), but does not explain how the social limitations referenced by the ALJ fail to accommodate the behavior observed, particularly given that this behavior was observed during a one-time interview pertaining to a cessation of disability benefits.

Because the agency employee's observations are reasonably consistent with the ALJ's RFC assessment, Plaintiff has not shown the ALJ impermissibly rejected them, such that the ALJ was obligated to explicitly discuss them. *See Flores v. Shalala,* 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that the ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)

On remand, the ALJ should obtain the medical evidence underlying the CPD to make findings regarding medical improvement, and consider the version of the listings in effect at the time of the CPD. The ALJ shall develop the record as needed and reconsider any other part of the decision as necessary.

DATED this 9th day of March, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge